Good morning, Your Honors. My name is Vernon Peltz, and I represent Danny Mason. Your Honor, this case has a slightly unusual procedure, and I'm going to try and go real fast through it. First, the government filed a motion for summary judgment on the basis of qualified immunity and the substantive basis of whether or not the officer's actions were objectively reasonable under the Fourth Amendment. That motion was denied by the trial court. The government filed a motion to reconsider, again alleging that the judge should reconsider his decision on both counts. That motion was denied. Several months later, in fact, almost a year later, the government filed a second motion to reconsider based on the same argument. Well, actually, the second motion to reconsider was based on the case of Saussure v. Katz. This time, the judge granted the government's motion to reconsider the summary judgment based on Saussure v. Katz. Saussure v. Katz did not apply to this situation when the first summary judgment was denied, and it does not apply to this case now. The main reason that Saussure v. Katz does not apply to this case is because Saussure v. Katz would be what I would phrase as the easy case, or what I was told in law school, the no-brainer. And Danny Mason's case is on the entire opposite end of the spectrum. The fact that Saussure v. Katz has been decided and the Supreme Court has decided that there has to be a clear distinction between the decision on the reasonableness of the merits, on the merits of the decision of the reasonableness, and the decision on whether or not qualified immunity should bar that even the reasonableness inquiry did not change and cannot change the fact that in this case, when the summary judgment was filed, there were disputed issues of fact, hotly disputed issues of fact, which should have precluded summary judgment on either qualified immunity or under the reasonableness standard of Graham v. O'Connor. And the key issue that was hotly contested is where was Danny Mason when he was shot? Where was Agent Horan when the shot was fired? And most importantly, whether or not it could be determined that Danny Mason was a threat to the officers or the safety of others when that last bullet that went through his back. Does a police officer have the right to use lethal force in apprehending a suspect who the police officer reasonably believed attempted to use lethal force against another police officer? Does he have that right? Well, I believe that under the holding of Graham v. O'Connor and the current line of cases that go underneath, even if the officer is mistaken about that belief, as long as his belief is objectively reasonable that he is shooting at somebody who could be armed and is a threat to an officer, as long as his belief is objectively reasonable, then I believe that he would be entitled to immunity. Okay. Now let's find out whether he had that view, whether the peace officer had a reasonable view that the person had used force. Didn't your client on two occasions say under oath that in fact the peace officer was reasonable in believing, one, that when he reversed his car and backed up, he was endangering the life of the other police officer, and two, that the peace officer whose life was purportedly endangered thought his life was endangered because he jumped into some cactus in order to avoid the car. And isn't that what your client said when he pled guilty, both in the colloquy to Judge Roll and in the written plea agreement? Didn't he say both of those things? Yes, Your Honor. That's correct. However, that does not end the inquiry here. Because the critical inquiry is when were the shots that Agent Horan fired? Were they fired when Danny Mason was revving his engine and going backwards? The evidence is reasonably clear that he started firing the shots when the car was approaching Officer Daniels. That's when he started to fire. That's not in dispute. That's not in dispute. And he continued to fire, right? That is not in dispute either. And at a time that your client was then leaving the scene. So then the critical question becomes is when the last shot was fired, was the officer's belief that there was still a threat to Daniels reasonable? But that's why I asked you the question whether or not it's appropriate in trying to apprehend a fleeing felon or an individual who threatened the life of an officer by driving, apparently aiming at him, whether it's appropriate to use lethal force to apprehend him. After all, there were numerous times that the peace officer tried to stop your client, from the beginning when he saw him to taking him, trying to take him by the hand, and the peace officer at that point threw him off. I mean, your client threw him away or tried to discard him. Actually, he pled guilty to assaulting this peace officer, right? That was the first count. That's correct. He gets into the car. He tries to grab the keys to stop your client from going. He fails at that. He's then caught in the car. He's dragged some small distance. He then is cast aside, and then your client reverses the car and aims, according to this peace officer, right towards the other peace officer. That's what preceded all the shots, right? That's correct, Your Honor. He's trying to apprehend him, and he's trying to apprehend him after a time, after a time that he thinks that your client is trying to kill the other peace officer with a car. That's correct, Your Honor, but that presupposes, first of all, the question whether or not the officers in this case ever had even a reason or a justification to ask Mr. Mason to stop in the first place. But assuming that, then when those actions happen, I can see where a reasonable officer might believe that he should use deadly force. But at what point does that end? Does he still get to use deadly force when the car is down the highway? They try to apprehend him. Can he still use deadly force a day later when he finds him on the street the next day? The question is, when he's using deadly force, at the moment that he thinks the officer is in danger, yes, that an officer, Graham v. O'Connor clearly stands for the proposition that if the officer at the scene believed that his use of force was necessary to protect the officer or an individual, it would be justified. So you can't, so your answer actually is, no, you can't use lethal force to apprehend an individual who's escaping under these circumstances. That's your answer? If he's just escaping, no. That's what Tennessee v. Garner clearly stands for. The case of Tennessee v. Garner decided in 1985 was almost exactly on point. And I think that case clearly stands for the proposition that you cannot use deadly force simply to apprehend a freeing felon. It must be limited to the situations in which the officer actually believes that there is a threat to the officer's safety or the safety of others. Now, once the threat is dispelled, just like self-defense, your use of deadly force is also gone. Once that person is no longer a threat to the officer, Daniels in this case who's in the bushes, or to the surrounding public, I think that then the threat, once the threat goes, so goes the use of deadly force, just like with self-defense. The bushes actually had some stickers on them, didn't they? Wasn't it cactus? Yes, Your Honor. I believe it was an agave cactus that he fell into. Even worse. Let me ask the following. How much do we know about how much time separated the shots? That is to say, was it bam, bam, bam, bam, bam? Or was it one shot, a little later, another shot? What do we know about that? Well, Your Honor, we know that, I know that the events happened rather quickly. But that is not the fact, just the fact that the events happened really quickly is no reason that an officer should not be aware of when he is using deadly force. Every bullet out of that gun is deadly force. And an officer should certainly be aware that every single time he fires that bullet, he is exercising excessive force. And if three bullets are justified and five are not. Where was the car, may I say it this way, what do we know from your client's point of view, given that you're trying to resist a summary judgment and we'll try to take the facts from your client's point of view to the degree that there's a dispute about them, where was the car at the various points when the bullets were fired? Well, Your Honor, the car was in several positions as the bullets were fired. And I see that I'm out of time. I would like to reserve just a minute, if possible, and answer your question still. Go ahead and answer your question. There was a diagram attached to it, and I would direct your attention. I think my brief pointed out to the diagram that was used in the deposition of this case, and I think it was attached to the State's brief. A summary judgment? That's fairly similar, and I could work with that. Okay. If that's the diagram. What you see there is you see two lots. And the one lot where my client was parked is in the back of the lot. And the road is out to the front, behind another lot. The lot that is in the back, where the trailer was, is fenced, and there is only one narrow gate. Anybody leaving that lot would necessarily have to use the gate. And what happened is Mr. Mason backed up once, tried to get out of the gate, couldn't make it, pulled forward, backed up again, managed to back out of the gate. Now, we know that a couple of three shots, based upon the ballistics and otherwise, were fired at the car as it was backing out of the yard towards Daniels. There were a couple of bullets that went through the front of the vehicle. Mr. Mason makes it through the gate, and he pulls in an arc like this in order to turn and go forward. When he pulls in that, when he backs up out of the gate like this, he's exactly parallel to Sergeant Daniels, who's on the other side of the fence. Sergeant Daniels said, I saw Danny Mason looking at me right out of the driver's door, which indicates he was parallel with the driver's door. And it's consistent with all the testimony. There wasn't much dispute about that. And at this time, there is no threat to Daniels because the car cannot magically jump sideways and hit him. And they're on two sides of the fence at this point? Yes, and Daniels is on one side of the fence, the car's on the other. Not that a fence would stop a car, but cars cannot move sideways. The car would have to be in forward or in reverse. And much of the government's case is hinged upon the idea that, well, he might have been going to do something other than drive off. And the wounding shot takes place still later. Much later. The car goes into forward. Mr. Mason is attempting to get to the highway. And at least two or three shots are fired. And at this time, as he's driving now forward towards Central Avenue, where is the nearest officer? All of the officers are behind him. Are all of them inside the fence? It appears that sometime right as he was going forward that Agent Horan ran towards the gate and was outside the fence when some of the last shots were fired. I think at least two, maybe three. But that Danny Mason's truck was well in advance heading away from the officers. Okay. That's your version of what the facts will show.  I think that's an undisputed version, Your Honor. Thank you for your argument. We're going to give you one minute, not a minute and four seconds, but one minute for rebuttal. You understand? Yes, sir. Thank you. We'll hear from the government at this time. When you're looking at this case, I hope you carefully look at the record because this plaintiff should not be able to play fast and loose with the judicial system by constantly taking different positions regarding the facts. And when you look through my brief, you'll see there's many instances where he's taken illegally, I think, inconsistent positions. For example, he goes into court and he pleads guilty, not to just assaulting Sergeant Daniels, who he tried to run over with the truck, who was impaled on that cactus the entire time until after the last shot was fired, but also to assaulting Officer Horan when he tried to initially stop him when he gets into the car. But what does he argue in his brief? He didn't do anything illegal, that you couldn't even really consider that an assault. But what about his point? His point is, look, the danger. At the time that the – that Officer Horan fired the last three shots or the wounding shot, the danger really had subsided. There was no danger to a peace officer, and therefore, he wasn't entitled to use lethal force. That's not true based on the perspective of a reasonable officer at the scene. And even if you want to assume, even though the record doesn't support that Sergeant Daniels was only on one side of the gate when this car was coming up to him, but even if you assume that his diagrams are right and everything was shot and he was going this angle, the fact is that this man, from the perspective of a reasonable officer, this wasn't the conduct of an individual who was going to lawfully submit to arrest. It was the conduct of a person evading arrest and willing to harm anyone who got in his way. And think about this. Here this man is in a car, a truck, that is used as a dangerous weapon. These officers are unprotected, not in such a vehicle. You know, I mean, sure enough, one officer is firing a gun, but this man has this big Chevy or Ford pickup truck that he has there to protect him that can easily run both of them away. But what does Officer Horan do? He gets in harm's way between Sergeant Daniels, who's impaled in the cactus, and between that vehicle. And why does he do that? To protect his friend because he's afraid that he's going to try to run over him again. I'm more interested in where everybody was at the time the wounding shot was fired. I just heard, and I want to understand that it was undisputed or essentially undisputed when I tried to say, well, that's your version of the facts. I want to hear your version of the facts. What was the – where was the truck, what direction was it going at the time the wounding shot was fired? Well, that's assuming that his client is telling the truth at the last shot. Well, I asked you to give your version of the facts, if they are different. Well, I don't think that anyone can say exactly when it was shot. He was shot in the back. Yes. That is agreement. And when you can make it a visceral response, that means that must have been he was leaving at the time he was shot. But he was going in reverse a lot towards Sergeant Daniels when this occurred, so it could have been. Wait a minute. He was shot in the back. Right. And he was shot by Officer Horan. Right. Right. Do we know where Officer Horan was standing at the time the shot was fired? What I'm trying to say, Judge, is unless you believe his client that it was the last shot, and for the record I think we have to do that, but there's nothing in the record that would support or tell us exactly which shot was the wounding shot because there just isn't the physical evidence to back that up. All we have, we do know that the vehicle was going in reverse when the first shots were fired, so he could have been hit by one of those initial shots is what I'm saying. Following up on that, let me ask this question. If it were clear and undisputed from the record that when the wounding shot was fired, Mason was in the act of backing his truck up at the other officer, this would be a clear case for summary judgment, right? Right. If the wounding shot were fired when Mason was driving forward, trying to get away, when the other officer was no longer in danger, it would be a less clear case for summary judgment. Less clear case, but under saucier and you take this new step of inquiry, the officer can be mistaken as to under saucier they talk about an officer may be mistaken as to a fact, and what they say specifically they give an example. If an officer reasonably but mistakenly believed that a suspect was likely to fight back, even if that's a mistake, for instance, the officer would be justified in using more force than in fact was needed, and that's under a Graham analysis. And if you look in this case, just substitute the word. If the officer reasonably but mistakenly believed that a suspect was likely to go back in reverse, until he was safely on Central Avenue and out of the area, the one fact that Mr. Mason did admit was what he claims is that he was shot just as he was getting on Central Avenue, just before he reached the area. So had he gotten on Central Avenue, which is a thoroughfare, is that right? Well, it's a little street. Okay, street, and there were other cars, and they were following him. What should they have done? Should they have just they should have tried to stop him. He apparently wasn't about to be stopped. Right. Certainly tremendous, uncontradicted evidence that he didn't want to be apprehended or stopped. Right. From the beginning to when he was finally stopped. So is it the argument that at that point they were entitled to shoot him? After all, he had just assaulted a peace officer. He had evaded arrest. At what point are they entitled to use lethal force? Well, fortunately, those aren't the facts we're presented with. The facts we are presented with, it was clearly able to use lethal force up to the point that he was clearly on Central Avenue. That's what you say. That's a legal conclusion. What if he's not quite to Central Avenue, he's still on the property, he's now going forward, he's left the gate, he's kind of done the backing up, he's now going forward, and he's leaving? You say that he can be shot at that time? This officer could not have. I'm asking you a question. Can he be shot at that time? Is he just about to leave the property, but he's not yet on the Central Avenue? Yes. He could be shot at that time? Because at this time, this man had been, he did not take a direct right to leave. Remember, he initially went back and forth with the officer hooked into his car. He went back. When he went back, he stopped. He did not leave. He went to the opposite end of the yard, sat there, revved his engine, and then went directly towards the agent, I mean, you know, Sergeant Daniels who was in the gate. After he gets past the gate, does he go all the way out to the street or in three-quarters of the way out to the street? No. He makes an arc around Sergeant Daniels. So Sergeant Daniels is impaled. Wait a minute. He's going to be run over. Let me ask you this. He makes an arc around Sergeant Daniels, but they're on different sides of the fence. No. They're on the same side of the fence, and that's where he misled you. And if you look at the record, it's clear that he was on the cactus. Look at his own diagram at page 261, and he has a picture of the cactus and he has a picture of Daniels. It's on the other side of the fence. There's a photograph that you can look at in the record, the excerpt of the record, that shows the gobby that he landed in. Yeah. No, I see it, actually. I've got him on the central area side of the fence. Correct. Right. And then on page 168, he's on this side of the fence where the vehicle is. Sergeant Daniels was under the belief that at any second, if you remember his testimony, he wondered, why isn't he going? He's going to go and do it again because he was afraid he was going to be shot. Your argument, as I understand it, is that at the point in time the wounding shot was fired, Agent Horan reasonably believed that he and or his fellow law enforcement officer were still in danger. Is that your argument? Yes. And under Saussure, if that's a reasonable belief based upon the objective facts, that's the end of the inquiry. Right. It doesn't make any difference what Mason thought, what other bystanders may have thought. If the officer firing the shot reasonably believed he and his mates were still in danger, that's it. And that's what, in the government's view, caused Judge Roll to reconsider his summary judgment. Right. And couple that with the fact that we have a person who is a methamphetamine dealer and user, that he appears to be acting erratically. People under the influence of methamphetamine act unpredictably and aggressively. He's acted just prior to that last shot aggressively and unpredictably. And Daniels made the mistake of thinking he was going to stop when he went to the opposite end of the fence, and he approached him and was walking up to him when that vehicle went directly right towards him, ready to run him over. If we were a jury, that would be pretty bad. I know. I'm a trial attorney, not really an appellate one. But that's when he's really, you know, he's coming directly back towards him. And Daniels made a mistake. Why make the mistake again? Why endanger these officers' lives again? This is a person who the saucier there is there to give the benefit of the doubt to officers in these hazy circumstances where there is the line between what is acceptable and what is unacceptable. And moreover, there was no law in this circuit that would tell this man, or nationally, that would tell Officer Horan that what he was doing was illegal. He couldn't have noticed. Your time is running, and I'd like to ask you a question. Mr. Mason, the little diagram, I'm now looking at his diagram. Three says, it was the last shot that hit me. That may or may not be true. The last shot hit me just as I was about to get to Central Avenue. That may or may not be true. But if it is true that it was the last shot and that that last shot hit him just as he was about to get to Central Avenue, who gets to decide whether at that point it was reasonable for the officer, Officer Horan, who was doing the shooting, to think that he or another officer was still in danger? Can we decide that on summary judgment? Do we need that to be a fact-finding by a jury? What do we do with that? We don't need that to be a fact-finding by the jury, because Saussure talks about why you want to have immunity and how immunity is important to be asserted at the beginning of the case so that officers in these circumstances do not have to go through a trial. And therefore, the fact-finder is the judge as to these instances as to reasonableness of the person. So the judge should decide. Let's assume the judge, I guess, should decide. I assume for purposes of this I take the facts most favorable to Mr. Mason. Right. And the facts most favorable to Mr. Mason are he's almost on to Central Avenue and he's hit by the last shot. Right. And the judge then decides that was either reasonable or unreasonable for Officer Horan to think that somebody was sufficiently in danger that lethal force is justified. That's the first inquiry. But then the second one is even if you assume that it wasn't justified and he was wrong about that, okay, then the question is, was he put on notice that what he did was unconstitutional? And in this particular case, there are no cases. Yes, I understand that. But for you to win at this stage, you have to say that for purposes of this decision at this time, Mr. Mason was almost at Central Avenue. It was the last shot that hit him, and it hit him in the back as he was driving away. Do you agree with that? I would agree with that. Okay. Just one quick question. Give me a short answer if you can. Some of us may have in mind that Central Avenue is like some huge thoroughfare or something. Where in Tucson is it? It's not in Tucson. It's in Sierra Vista. It's a trailer park neighborhood with big lots, and it's just a little asphalt road that I don't believe even has a center stripe down it. Thank you. Rebuttal? One minute. Your Honor, I must apologize. I'm certainly not trying to play fast and loose with any facts. I may have mistakenly misunderstood where the fence was, but it's not critical in any case. The critical inquiry is whether or not there was a genuine issue of fact which would preclude summary judgment if you view the evidence in the light most favorable to Danny Mason. And if you view the evidence in the light most favorable to Danny Mason, that last bullet went through his back as he was headed towards Central Avenue. Four shots were in the back of the truck, not in the front of the truck, not on the side of the truck. The fact of the matter is it's obvious that there was a constitutional right involved here, the right to be free from deadly force. There's no greater right and no bigger fear that any citizen in this country should have. The next question is whether or not that right was clearly established as far as Saucere goes. Grand v. O'Connor clearly sets forth and should clearly set forth when officers can use deadly force. And it is only to save the life of another officer or when other people are seriously in danger and at all other times they should not use deadly force. But if the officer thought that he was going back towards him and the other officer was in danger, and if that was a reasonable belief, notwithstanding the fact that your client was driving away or driving in a different direction, isn't then he's entitled to immunity, isn't he? The question is whether or not his belief was reasonable, Your Honor. And under these facts, it was not. Okay. Thank you for your argument. Thank both sides for the argument. The case just argued will be submitted for decision.
judges: Hawkins, W.fletcher, Breyer